UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | CASE NO. C70-9213 RSM |
| Plaintiffs, | Subproceeding No. 09-01 |
| v. | ORDER DENYING MOTIONS FOR RECONSIDERATION |
| STATE OF WASHINGTON, *et al.*, | |
| Defendants. | |

On March 19 and 20, 2018, the Quileute Indian Tribe, Hoh Indian Tribe, Quinault Indian Nation, and Suquamish Indian Tribe filed Motions for Reconsideration asking the Court to reconsider its prior Order regarding boundaries of the Quinault and Quileute U&As. Dkts. #442, #444, #445 and #448. These Tribes essentially argue that the western U&A boundaries established by this Court fail to account for Quileute and Quinault whaling and sealing voyages in directions other than due west from the coast. Dkts. #442 at 3-4 and #445 at 3. Accordingly, these Tribes ask the Court to reissue its Order and adopt boundaries based on "radial lines representing multidirectional" voyages. Dkts. #442 at 6-7 and #445 at 6-7. At the Court's direction, the Makah Indian Tribe and the State of Washington provided responses to those Motions. Dkts. #452, #453 and #456. The Court now DENIES the Motions for Reconsideration.

"Motions for reconsideration are disfavored." LCR 7(h). "The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of

ORDER
PAGE - 1

new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." LCR 7(h)(1). In this case, the Court is not persuaded that it should reconsider its prior Order.

On July 9, 2015, the Court entered lengthy Findings of Fact and Conclusions of Law, determining that the western boundary of the Quinault Indian Nation's usual and accustomed fishing ground in the Pacific Ocean is 30 miles from shore, that the western boundary of the Quileute Tribe's usual and accustomed fishing ground in the Pacific Ocean is 40 miles offshore, and the northern boundary of the Quileute Tribe's usual and accustomed fishing ground is a line drawn westerly from Cape Alava. Dkt. #369. However, the Court also noted that it had not received evidence at trial specifying the longitudes associated with the U&A boundaries determined therein. Accordingly, in order to delineate the boundaries with certainty, the Court directed the parties and interested parties to brief the precise longitudinal coordinates associated with the boundaries set forth herein. *Id*. In response, Quileute and Quinault advocated for western U&A boundaries drawn as straight lines, from north to south, regardless of the distance from shore as these lines diverged from the actual coastline. Dkts. # 372–#375. The Makah proposed slanting lines approximating the shoreline at the travel distances adjudicated by this Court. Dkt. # 377. The State generally concurred with the Makah, but proposed a boundary that tracked the shoreline. Dkt. # 381. In Reply, the Quileute and Quinault defended their initial boundaries, but proposed an alternative western boundary charted as "waypoints" based upon a "radius" approach. Dkt. # 388 at 8-10. The Court ultimately adopted the longitudinal and latitudinal boundaries proposed by the Quileute, Quinault and Hoh. Dkt. #394.

This matter was then appealed to the Ninth Circuit Court of Appeals. Dkts. #396 and #398. While the Court of Appeals affirmed in large part this Court's determinations, it reversed

this Court with respect to its determination of the Quileute's and Quinault's U&A boundaries. Dkt. #435. The Court of Appeals stated:

> The parties agreed as to the northern boundaries but "dispute how the parties believe the Western boundary for the Quileute and Quinault should be demarcated as the line proceeds south." The court decided to use longitudinal lines because it had done so in a prior proceeding with respect to the Makah's boundaries. The court started at the northernmost point of the Quileute's U&A, drew a line 40 miles west, and used that longitudinal position as the western boundary for the entire area. The court did the same with 30 miles for the Quinault. The map below depicts the final result.
>
> [graphic omitted]
>
> The Makah takes issue with the court's use of a straight vertical line because the coastline trends eastward as one moves south. The Makah calculates the coast-to-longitude distance at the southernmost point as 56 miles for the Quileute and 41 miles for the Quinault. In other words, the Quileute's and Quinault's southernmost boundaries respectively extend 16 miles and 11 miles beyond the court's finding of usual and accustomed fishing, and their total areas respectively sweep in an extra 413 square miles (16.9% of the total 2,228 miles). The result would be different, for example, had the boundary lines been drawn parallel to the coastline.
>
> These significant disparities underscore the deficiencies in the court's longitudinal boundaries. . . .
>
> . . .
>
> Accordingly, we reverse the district court's order imposing longitudinal boundaries. Because the law does not dictate any particular approach or remedy that the court should institute, we leave it to the court on remand to draw boundaries that are fair and consistent with the court's findings.

Dkt. #435 at 23-27.

After remand, this Court reviewed its Findings of Fact and Conclusions of Law and Memorandum Order (Dkt. #369), along with its Amended Order Regarding the Boundaries of Quinault and Quileute U&As (Dkt. #394), and numerous other documents (Dkts. #372-#383 and #388), and determined that the State of Washington's method of determining the boundaries at issue are most consistent with this Court's determinations regarding boundaries in this matter,

ORDER
PAGE - 3

and addresses the Court of Appeals' concerns with the Court's prior conclusions. *See* Dkts. #381 at 3-4 and #435 at 23-27. On March 5, 2018, the Court issued a new Order adopting the State of Washington's proposed boundaries. Dkt. #439.[1]

On the instant motions for reconsideration, the Quileute Indian Tribe, Hoh Indian Tribe, Quinault Indian Nation, and Suquamish Indian Tribe essentially reiterate prior "radius" arguments made to the Court in its initial briefing regarding boundaries. Thus, the Tribes fail to present new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.

Moreover, those Tribes fail to demonstrate manifest legal error. For the reasons stated by the Makah, the approach advocated by the Quileute is not based upon appropriate record evidence. *See* Dkt. #453 at 2-10.

Finally, the Quinault argue for the first time on reconsideration that the boundary should not be tied to the geographic shoreline because the shoreline is constantly shifting. Dkt. #445 at 3-4. The Tribe provides no explanation why this argument could not have been previously brought to the Court's attention earlier with reasonable diligence.

Thus, the Court agrees with the State of Washington that it's new Order has fulfilled the Ninth Circuit's instruction to adopt a boundary reflecting determinations made by this Court and the evidence presented by the parties at trial.

For all of these reasons, the Court finds that the Quileute Indian Tribe, Hoh Indian Tribe, Quinault Indian Nation, and Suquamish Indian Tribe have failed to meet the applicable standard for motions for reconsideration and the Court DENIES the motions (Dkts. #442, #444, #445 and #448).

---

[1] The Order was subsequently amended to correct a scrivener's error. Dkt. #449.

ORDER
PAGE - 4

DATED this 16 day of April 2018.

*[signature]*
RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 5